DILLARD *v.* BATTLE.

## Opinion delivered November 24, 1924.

1. TRUSTS—RESULTING TRUST.—Where one buys real estate and takes deed in another's name, a trust generally results by operation of law to him who advances the purchase money, but, where a husband purchases land and take deed to his wife, it is presumed to be an advancement or a gift.

2. HUSBAND AND WIFE—PRESUMPTION OF GIFT—REBUTTAL.—The presumption, where a husband buys land and takes deed to his wife, that he intended a gift or advancement, may be rebutted by antecedent or contemporaneous declarations and circumstances which tend to prove the intention that the wife should hold as trustee.

3. TRUSTS—PAROL PROOF OF RESULTING TRUST.—A resulting trust may be established by parol evidence, but such evidence must be full, clear and convincing.

4. TRUSTS—RESULTING TRUST.—Evidence *held* not to establish a resulting trust in a husband's favor.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Robt. L. Rogers* and *Floyd Terral,* for appellant.

*Will G. Akers,* for appellee.

HART, J. Appellee brought this suit in equity against appellants to quiet title in himself to the town lots described in the complaint.

The object of the bill is to have a resulting trust declared in the lots which appellee, as husband, had purchased, and, by fraud or mistake, the title to which had been taken in the name of his wife. The appellants claimed title under a will executed in their favor.

The chancery court granted the relief prayed for in the complaint, and quieted the title of the appellee in said lots, free from any right or title in the lots of appellants. The case is here on appeal.

It appears from the record that the books kept by F. M. Fulk in his lifetime showed a sale made on May 11, 1907, to A. Battle and Hattie Battle, of lots 14 and 15, block 317, in the city of Little Rock, for the sum of $1,200. Monthly payments on said lots from May 11, 1907, to January 18, 1910, in the handwriting of F. M. Fulk, are

shown on his ledger. After his death a deed was executed to said lots to Hattie Battle on February 18, 1911. The notes given for the purchase price of said lots were signed by A. Battle and Hattie Battle.

Aaron Battle was the principal witness for himself. According to his testimony, he was 19 years of age when the Civil War commenced, and can neither read nor write. He bought lot 13, described in the complaint, during the lifetime of his first wife. After his first wife died, he married again, and made an agreement with his second wife (Hattie) that he should buy said lots 14 and 15 from Judge F. M. Fulk, and that the lots should be taken in the name of his wife and himself. It was agreed between them that the survivor should inherit from the other. The witness had a team, and was principally engaged in hauling lumber. In this way he earned the money to pay for the lots. He gave the money to his wife for that purpose, and she attended to the business of making the payments which were due monthly. His wife did not pay any part of the purchase price of said lots, and he did not know that she had taken the deed in her own name. He placed implicit confidence in his wife, and supposed that she had taken the title in their joint names. He learned that his wife had taken the title to the property in her own name after she died, when he applied to a Little Rock bank for a loan upon the property.

It appears from the record that in February, 1911, Hattie Battle mortgaged said lots to secure a loan of $1,000 with which she built two houses on the lots. The mortgage was satisfied in 1917. During all of this time Hattie Battle took charge of the lots and collected the rents on the houses which she had built on them. On the 17th day of January, 1918, Hattie Battle executed a will in which she gave said lots to her husband, Aaron Battle, during his lifetime, and, after his death, lot 14 was to go to two of her nieces and lot 15 was to go to one of her nieces and to the Mount Pleasant Baptist

Church of Little Rock, of which she was a member. Hattie Battle died on February 17, 1918.

According to the testimony of the minister of her church, Aaron Battle had done very little work for at least nine or ten years before Hattie's death. Hattie was a hard-working woman, and earned the money by washing and ironing with which she paid for the two lots in question. After she borrowed the $1,000 with which to build the two houses on the lots she rented them out, and, with the rents and what she made by washing and ironing, she paid off this mortgage. The witness very frequently attended to the business of making these payments for her. After her death the witness discussed the conditions of the will with Aaron Battle, and he knew what disposition his wife had made of the lots. Another person who had rented one of the houses from her for several years testified that he always paid the rent to her, and that Aaron Battle had done but little work since the year 1908.

One of the nieces of Hattie Battle, who was also a beneficiary in the will, and her husband both testified that Aaron Battle had never made any claim to the lots in question, and that he admitted, after her death, that it was the property of his wife. The will of his wife was read in his presence, and he did not make any objections to it. Aaron Battle understood the contents of the will.

Another witness testified that she rented one of the houses from Hattie Battle, and always paid the rent to her. Hattie Battle claimed to own the lots in the presence of Aaron Battle, and he never made any objection to her ownership. Hattie continued to work up to the time of her death. During the latter years of her life, Aaron Battle did but little work, and that was in making a truck patch. Several years before his wife died he lost one of his mules, and then hauled ice for a short time with the other one. Then he gave up all work, except a little about his truck patch.

The general rule is that, when a man buys real estate and takes the deed in the name of another, a trust

results by operation of·law to him who advances the purchase money. If, however, the title is taken in the name of the wife of the person from whom the money comes, it is presumed to have been an advancement or a gift. This presumption, however, may be rebutted by antecedent or contemporaneous declarations and circumstances which tend to prove the intention of the person who furnished the money to buy the estate that the grantee should hold as a trustee, and not beneficially for himself. A resulting trust may be established by parol evidence, but such evidence must be full, clear, and convincing. *Milner* v. *Freeman*, 40 Ark. 62; *Wood* v. *Wood*, 100 Ark. 370; *Bray* v. *Timms*, 162 Ark. 247; and *Mann* v. *Mann*, 164. Ark. 43.

To uphold the decree, reliance is especially placed upon the case last cited. We do not think, however, that the evidence in favor of the husband in the present case is so strong as that in the case last cited. In·that case the testimony of the appellee was not contradicted. He testified in detail, and showed clearly that his money paid for the land in question, and that it was intended that his wife should take the land as trustee for him and not for her own benefit.

In the present case several witnesses testified that Hattie Battle exercised sole control over the lots during her lifetime. She referred to the lots, in the presence of her husband, as belonging to herself, and he never contradicted her. It is true that he claims that he was not able to read and write, and, on this account, did not know that the title had been taken in the name of his wife. The fact that he was uneducated, however, would not prevent him from knowing that his wife was claiming the lots as her own. He never interfered with her in the least in her assertion of ownership. He knew that she had mortgaged them for the purpose of securing a loan with· which to build two houses upon the lots. Three of the witnesses testified that he had recognized that the title to the lots was in his wife after her death. They said that the will of his wife was read over to him, and

that he understood that she had given him a life estate in the lots and the remainder in fee to her nieces and to her church.

It is true that the testimony of these witnesses was weakened to some extent on cross-examination, and that they were beneficiaries under the will. Their interest, however, was at least no greater than that of appellee himself.

The amount earned either by the husband or wife is not shown. So far as the record discloses, the wife might have earned as much by washing and ironing as the husband earned by hauling lumber. Then, too, it was the duty of the husband to have supported his wife, and this would have reduced his earnings, so that it was more likely that the wife paid for the lots than that he paid for them.

The facts and circumstances testified to by the witnesses for appellants tended to contradict the testimony given by appellee, and we are of the opinion that the chancellor erred in holding that appellee had established a trust in his favor by clear and convincing testimony. Under the evidence as disclosed by the record the chancellor should have dismissed the complaint of appellee for want of equity.

It follows that the decree will be reversed, and the cause will be remanded with directions to dismiss the complaint of appellee, indicated in the opinion.